# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LOUIS LAMON,<br><br>        Plaintiff,<br><br>   v.<br><br>DERRAL G. ADAMS, et al.,<br><br>        Defendants. | CASE NO. 1:07-cv-01390-LJO-WMW PC<br><br>ORDER REQUIRING PLAINTIFF EITHER TO FILE A THIRD AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE<br><br>(Doc. 21)<br><br>RESPONSE DUE WITHIN THIRTY DAYS |

Plaintiff Barry Louis Lamon ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at California State Prison in Corcoran, California ("CSP-Corcoran"). Plaintiff is suing under section 1983 for the violation of his rights under the First, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution. Plaintiff also alleges a number of claims under state law.[1] Plaintiff names Derral G. Adams (warden), D. D. Sheppard-Brooks (associate warden), James D. Hartley (acting warden), R. Lopez (chief deputy warden), L. Hoogland (inmate appeals branch), Hodge-Wilkins (facility captain), Worthman (academic principle), S. Hoffman (academic vice principle), D.J. Ruiz (lieutenant), J. Martinez (sergeant), M. Mason (sergeant), Franklin (facility law librarian), Gomez (correctional officer "C/O"), J. Munoz (C/O), F. Yamat (C/O), J. Masiel (C/O), B. David (C/O), L.

---

[1]The court will not address whether Plaintiff has sufficiently plead his state law claims at this time as it is not yet clear whether it is appropriate for this court to exercise supplemental jurisdiction over Plaintiff's state law claims.

1

Mendoza (C/O), and Jane Doe (C/O) as defendants. For the reasons set forth below, Plaintiff will be given the opportunity to amend his complaint, or to proceed only on claims found to be cognizable by this order.

I. **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

II. **Background**

A. **Procedural Background**

Plaintiff filed the original complaint in this action on September 21, 2007. Plaintiff, on his own initiative, filed a motion to amend his complaint on June 18, 2008, which was granted on June 20, 2008. (Doc. #9, 11.) Plaintiff again filed a motion to amend his complaint on February 11,

///

2

2009, which was granted on April 8, 2009. (Doc. #18, 20.) This action proceeds on Plaintiff's Second Amended Complaint filed on April 8, 2009. (Doc. #21.)

## B. Factual Background

Plaintiff is an inmate involved in multiple lawsuits against prison officials. As a result of these lawsuits, Plaintiff alleges that Defendants are obstructing his access to the courts and retaliating against him. Plaintiff requested that Defendants Franklin and Gomez make copies of the "original manuscript" of a civil action, but the document was returned without copies. On May 1, 2006, Plaintiff again requested copies of the documents from Defendants Franklin and Gomez. The document was held for three weeks. During that time, Defendants Gomez, Martinez, Masiel, Mendoza and David harassed and retaliated against Plaintiff by "tainting . . . my meals with pain and discomfort causing chemical agents, physically beating me while I was handcuffed behind my back and intentional[ly] inflicti[ng] . . . mental and emotional anguish." (Compl. ¶ 45.) On May 23, 2006, Plaintiff asked Defendant Franklin to return the document. Defendant Franklin became very emotional and complained that she did not have a copy machine, or adequate funds, equipment, or staff to do her job. Defendant Franklin informed Plaintiff that she had quit her job and that if Plaintiff wanted his document back he would have to ask her replacement. Plaintiff demanded to speak with a lieutenant or sergeant regarding his document, but Defendant Franklin refused. Defendant Gomez then told Plaintiff that his library session was being terminated because he was being disruptive.

Defendants Martinez, Masiel, David, Mendoza, and Jane Doe arrived to escort Plaintiff from the library. Plaintiff was shackled and escorted back to his cell by Defendants Masiel, David, Mendoza and Jane Doe.[2] Defendant Masiel told Plaintiff that correctional officers were tired of Plaintiff's grievances and lawsuits and that if Plaintiff did not back off they were going to "take [him] down." (Compl. ¶ 54.) Plaintiff responded by threatening to sue them for retaliation. After they arrived at Plaintiff's cell, Defendants Masiel, David, Mendoza, and Jane Doe shoved Plaintiff
///

---

[2] Defendant Martinez apparently did not escort Plaintiff back to his cell, after making a threatening remark to Plaintiff. (Compl. ¶ 51.)

3

into a concrete-slab bed. Defendants climbed on top of Plaintiff, shoved him face down and began to pummel him all over his body.

Plaintiff filed an inmate appeal complaining of the use of excessive force against him. Plaintiff alleges that Defendant M. Mason conducted a sham inquiry that did not include any of his inmate witnesses. Plaintiff was not informed of whether the contents of Plaintiff's appeal were found to be proven or disproven pursuant to a confidentiality policy that provides that the results of Plaintiff's staff complaint would not be disclosed to him. Plaintiff alleges that prison officials make use of the confidentiality policy to cover up the misconduct of correctional officers. The lack of a legitimate staff complaint system and punishment for correctional officers' misconduct allow correctional officers to freely violate inmates' rights, causing incidents such as Plaintiff's beating.

## III. Discussion

### A. First Amendment Claims

#### 1. Access to Courts[3]

Plaintiff alleges that Defendants interfered with his right of access to the courts. Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures); Vandelft v. Moses, 31 F.3d 794, 796 (9th Cir. 1994); Ching v. Lewis, 895 F.2d 608, 609 (9th Cir. 1989) (per curiam). To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. See Lewis, 518 U.S. at 349. An "actual injury" is "'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" Id. at 348. A prisoner cannot base an access to courts claim solely by alleging deficiencies in the prison's law library. See id. at 351. Prisoners do not have a freestanding right to a law library.

///

---

[3]This section covers Plaintiff's First ("First Amendment Interference"), Second ("Denial of Meaningful Access to the Courts"), Third ("Denial of Adequate and/or Reasonable Law Library"), Tenth ("Denial of Meaningful Access to the Courts/Supervisor Liability"), Eleventh ("Denial of Reasonable or Adequate Law Library/Supervisory Liability"), and Eighteenth ("Denial of Reasonable and Adequate Law Library/Failure to Train") claims for relief.

4

Id. A law library is simply "one constitutionally acceptable method for assur[ing] meaningful access to the courts." Bounds, 540 U.S. at 825.

Plaintiff provides general allegations regarding the deficiencies of CSP-Corcoran's law library. Plaintiff alleges that there exists a "policy, practice, procedure and/or 'shadow-custom' at Corcoran" of interfering with inmates' access to the courts by "maliciously failing to call [inmates] to the library", "expelling [inmates] from the library based on sham and contrived excuse[s]", "providing poor quality copying or complete denial of copy services", "stealing documents submitted for copying", "denying . . . adequate paper, envelopes and other forms", and "violating our state-created right to confidential correspondence with courts by censoring inmate legal work-product and revealing the legal theories, allegations and supporting evidentiary documents to co-workers". (Compl. ¶ 41.) Plaintiff alleges a specific incident when he was unable to obtain copies of legal documents. Plaintiff alleges that the injuries he suffered due to the insufficiencies of the law library was that he was "denied . . . adequate services to research and file more than five forward-looking civil actions" and "suffer[ed] the loss of time, effort, energy and costs of amending all of [his] . . . claims." (Compl. ¶ 43.)

In order to state a claim, Plaintiff must "demonstrate that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim." Lewis, 518 U.S. at 352. Plaintiff alleges that he was forced to submit "sloppy" pleadings as a result of the insufficient law library system. However, prison officials are not obligated to provide services that "enable the prisoner to . . . litigate effectively once in court." Id. at 354. Plaintiff has not alleged how his "sloppy" pleadings prejudiced his claims in courts. Courts are obligated to construe pro se prisoner complaints liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Even when presented with "sloppy" complaints, the court will notify the prisoner of the deficiencies of the complaint and give the prisoner the opportunity to cure the "sloppy" deficiencies by filing an amended complaint, as will be done in this order. As such, Plaintiff has failed to allege that he has suffered "actual injury" with respect to any of his claims, and fails to state a claim for denial of access to the courts.

///

///

### 2. Retaliation[4]

Plaintiff alleges that Defendants Masiel, David, Mendoza, and Jane Doe retaliated against him for exercising his constitutional right to file inmate grievances and lawsuits. In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff alleges that Defendants Masiel, David, Mendoza, and Jane Doe attacked Plaintiff because of his protected conduct in petitioning the government and that there was no legitimate correctional goal for their actions. Plaintiff states a cognizable claim for retaliation against Defendants Masiel, David, Mendoza, and Jane Doe.

### B. Eighth Amendment Claims - Use of Excessive Force[5]

Plaintiff alleges that Defendants used excessive force against him in violation of his rights under the Cruel and Unusual Punishments Clause of the Eighth Amendment. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison

---

[4]This section covers Plaintiff's Fourth ("First Amendment Retaliation for Petitioning the Courts") claim for relief. Plaintiff's retaliation claims against supervisory personnel (his Ninth, Twelfth claim for relief) are discussed below. See infra Part III.D.

[5]This section covers Plaintiff's Sixth ("Cruel and Unusual Punishment/Unnecessary Use of Force") and Seventh ("Cruel and Unusual Punishment/Intentional Infliction of Pain") claims for relief. Plaintiff's Eighth Amendment claims against supervisory personnel (his Fourteenth, Fifteenth, and Seventeenth claims for relief) are discussed below. See infra Part III.D.

official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety". Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Where prison officials are accused of using excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-321 (1986)). Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted. Whitley, 475 U.S. at 321. Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. Id. The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." Id. at 319. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

///

Plaintiff alleges that Defendants Masiel, David, Mendoza, and Jane Doe slammed Plaintiff into a concrete bed and pummeled him after escorting him from the law library. Plaintiff alleges that there was no legitimate penological justification for the beating because he had complied with all orders given to him and he was securely shackled with his hands behind his back. Plaintiff alleges that the use of force was out of retaliation for filing inmate appeals and lawsuits. Therefore, Plaintiff states a cognizable claim for use of excessive force against Defendants Masiel, David, Mendoza, and Jane Doe.

C. **Fourteenth Amendment Claims**

1. **Due Process Claim**[6]

Plaintiff alleges that Defendants deprived Plaintiff of his "personal security interest" in violation of the Fourteenth Amendment. The court construes this as a due process claim. "[W]here a particular amendment provides and explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted). The Eighth Amendment provides a more explicit textual source of constitutional protection against the infringement of Plaintiff's "personal security interest". Therefore, Plaintiff's Fourteenth Amendment due process claim will be addressed as an Eighth Amendment claim. See supra Part III.B.

2. **Equal Protection Claim**[7]

Plaintiff alleges that Defendants Masiel, David, Mendoza, and Jane Doe violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of the plaintiff's

---

[6]This section covers Plaintiff's Eighth ("Violation of Personal Security Interest") and Sixteenth ("Violation of Personal Security Interest/Supervisory Liability") claims for relief.

[7]This section covers Plaintiff's Fifth ("Denial of Equal Protection Under the Laws") claim for relief. Plaintiff's equal protection claims against supervisory personnel (his Thirteenth claim for relief) are discussed below. See infra Part III.D.

8

membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005).

Plaintiff alleges that the attack against Plaintiff was partially motivated by the fact that Plaintiff was African-American. Therefore, Plaintiff states a cognizable claim for an equal protection violation against Defendants Masiel, David, Mendoza, and Jane Doe.

### D. Claims Against Supervisory Personnel/Appeals Reviewers

Plaintiff alleges that supervisory personnel (Defendants Adams, Sheppard-Brooks, hartley, Lopez, Ruiz, Worthman, Mason, Hoffman, Hodges-Wilkins, Hoogland, and Martinez) are liable for the constitutional violations committed by prison officials who attacked and retaliated against Plaintiff. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

#### 1. Inmate Appeal Policy

Plaintiff alleges that supervisory personnel are liable due to their policies and participation in the inmate appeals process. Normally, appeals reviewers are not liable for the constitutional violations committed by others merely for denying a prisoner's inmate appeal because "only persons who cause or participate in the [constitutional] violations are responsible". George v. Smith, 507

F.3d 605, 609 (7th Cir. 2007) (citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996)). "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Id. There is no causation because any actions that the appeals reviewer took was after a constitutional violation had already occurred. Even assuming that the appeals reviewers wrongly denied Plaintiff's administrative appeals, the constitutional violation had already occurred at that point and the denials, even if wrongful, were not in themselves constitutional violations.

Plaintiff claims that appeals reviewers are liable under a different theory. Plaintiff's theory is that appeals reviewers are liable not necessarily for their conduct in processing and denying Plaintiff's specific appeal, but for their conduct in systematically denying or covering up all appeals alleging staff misconduct. Plaintiff states that appeals reviewers treat any investigations into staff misconduct as "confidential". Assuming Plaintiff's allegations as true, because the results of the investigation are not disclosed, appeals reviewers never actually discipline staff for any misconduct alleged in an inmate appeal and any investigation that is allegedly conducted is a sham. Because prison staff have no fear of reprisal from appeals reviewers for misconduct, they wantonly violate the rights of inmates, causing incidents like Plaintiff's beating to occur.

Plaintiff's theory of causation is tenuous. "The causation requirement of sections 1983 and 1985 is not satisfied by a showing of mere causation in fact." Arnold v. International Business Machines Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). "Rather, the plaintiff must establish proximate or legal causation." Id. "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). The standard for causation closely resembles the standard "foreseeability" formulation of proximate cause. Arnold, 647 F.2d at 1355.

Defendants Masiel, David, Mendoza, and Jane Doe's actions in beating and retaliating against Plaintiff cannot be said to have been a foreseeable result of the alleged policy by supervisory personnel and appeals personnel in denying and covering up appeals alleging staff misconduct.

1 Plaintiff's theory of causation is rather speculative - at best he can allege that a more strict and thorough staff complaint process would reduce some of the incidents of staff misconduct. Whether an improved staff complaint process would have prevented this specific incident of staff misconduct is uncertain. Therefore, Plaintiff has failed to allege that supervisory and appeals personnel are liable for promulgating a policy that was the moving force of any alleged constitutional violations.

## 2. Failure to Prevent Constitutional Violations

Plaintiff alternative theory against supervisory defendants is that each had knowledge that there were a high number of allegations of misconduct against Defendants Martinez, Masiel, David, and Mendoza and thus they should have acted to prevent the attack against Plaintiff. (Compl. ¶ 64.) Knowledge that numerous allegations of misconduct were filed against Defendants Martinez, Masiel, David, and Mendoza is not sufficient to hold supervisory personnel liable for their constitutional violations. Such knowledge is not specific enough to warrant liability. Plaintiff must allege that supervisory defendants were aware of a specific harm to Plaintiff. Ketchum v. Alameda County, 811 F.2d 1243, 1247 (9th Cir. 1987). Plaintiff has not alleged that supervisory defendants were aware of any specific threat of harm that Defendants Martinez, Masiel, David, and Mendoza posed toward Plaintiff. Plaintiff fails to state any cognizable claims against supervisory defendants.

## IV. Conclusion and Order

Plaintiff's complaint states cognizable claims against Defendants Masiel, David, Mendoza, and Jane Doe for retaliation in violation of the First Amendment, use of excessive force in violation of the Eighth Amendment, and violating Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff's complaint fails to state claims against any other defendants. The Court will provide Plaintiff with the opportunity to file a third amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his third amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file a third amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing,

and the Court will issue a recommendation for dismissal of the other claims and defendants, and will forward Plaintiff three (3) summonses and three (3) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his third amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Hydrick v. Hunter, 500 F.3d 978, 987-88 (9th Cir. 2007). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . .", Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted), meaning Plaintiff must provide enough allegations in his complaint to demonstrate why he is entitled to the relief that he seeks.

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File a third amended complaint curing the deficiencies identified by the Court in this order, or

    b.  Notify the Court in writing that he does not wish to file a third amended complaint and wishes to proceed only against Defendants Masiel, David, Mendoza, and Jane Doe for retaliation, use of excessive force, and equal protection violations; and

3.  If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:  May 7, 2009**         **/s/ William M. Wunderlich**
                          UNITED STATES MAGISTRATE JUDGE